**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**BARBARA KEILER, MONA GAY**                :
**THOMAS, and LINDA BARRETT, on behalf**    :
**of themselves and all others similarly situated,**    :
    **Plaintiffs,**                :
                 :    **12 CV 5558 (HB)**
    **- against -**                :
                 :    <u>**OPINION & ORDER**</u>
**HARLEQUIN ENTERPRISES LIMITED,**          :
**a Canadian corporation, HARLEQUIN BOOKS** :
**S.A., a Swiss company, and HARLEQUIN**     :
**ENTERPRISES B.V., a Dutch company,**       :
    **Defendants.**                :
-------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:[1]**

   Plaintiffs Barbara Keiler, Mona Gay Thomas, and Linda Barrett bring claims for breach of contract and, in the alternative, unjust enrichment. Defendants are Harlequin Enterprises Limited ("HEL") and affiliated entities Harlequin Enterprises B.V. ("HEBV") and Harlequin Books S.A. ("HBSA"). On this motion, Defendants argue that the complaint should be dismissed for failure to state a claim. For the reasons stated below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

   HEL is a publisher of romance novels and is the parent company of HBSA and HEBV (collectively "the Harlequin subsidiaries"). HBSA is the successor entity to HEBV. From 1990 to 2004, Plaintiffs entered into publishing agreements with the Harlequin subsidiaries to publish romance novels under the Harlequin and related imprints. HEL is not a signatory to any of the contracts. In fact, the terms of these agreements did not expressly reference royalties related to e-books. Instead, e-book royalties fell under an umbrella "All Other Rights" clause. That clause provided that Plaintiffs were entitled to "fifty percent (50%) of the Net Amount Received by Publisher for the exercise, license or sale of said rights." (Crew Decl. Ex. 1–3, at 13.)

   After Plaintiffs entered into these agreements, HEL obtained from the Harlequin subsidiaries a license to publish Plaintiffs' e-books. In the event of a license to a related entity, the contracts provided that "[t]he Net Amount Received for the sale or license of said rights by Publisher from a Related Licensee shall, in Publisher's estimate, be equivalent to the amount reasonably obtainable

---

[1] William Kostas, a second-year student at New York Law School and a Spring 2013 intern in my Chambers, provided substantial assistance in researching and drafting this opinion.

by Publisher from an Unrelated Licensee for the license or sale of the said rights." (*Id.*) Here, in exchange for the license to HEL, the Harlequin subsidiaries received 6 to 8 percent of the e-books' cover prices. The Harlequin subsidiaries paid Plaintiffs royalties amounting to 50 percent of this license fee pursuant to the "All Other Rights" clause—specifically, 3 to 4 percent of the cover prices. Plaintiffs argue that they instead are entitled to 50 percent of HEL's net receipts, rather than 50 percent of the license fee. In the alternative, Plaintiffs assert that the licensing fees paid to the Harlequin subsidiaries were not "equivalent to the amount reasonably obtainable . . . from an Unrelated Licensee." (Am. Compl. ¶ 82.)

## DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), I must "accept all factual allegations in the complaint as true." *State Univs. Retirement Sys. of Ill. v. Astrazeneca PLC*, 334 F. App'x 404, 406 (2d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)), *see* Fed. R. Civ. P. 12(b)(6). But while a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the level of detail "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**A. The Harlequin Subsidiaries Are the Defined "Publisher" in the Agreements**

I begin with the publishing agreements' express terms. "A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *In re Coudert Bros.*, No. 11 Civ. 4949, 2013 WL 372161, at *10 (S.D.N.Y. Jan. 30, 2013) (quoting *Acumen RE Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, No. 09 Civ. 1796, 2012 WL 3890128, at *5 (S.D.N.Y. Sept. 7, 2012)). The contracts here tie royalties to the "Net Amount Received by Publisher" for the exercise of the rights to Plaintiffs' e-books. (Crew Dec. Ex. 1–3, at 13.) Plaintiffs assert that because HEL performed most publication duties and controlled the negotiation and administration of the contracts in all respects, the "Publisher" for the purposes of these contracts is HEL. But here, each contract states expressly that HBSA will "hereinafter [be] called the 'Publisher.'" (*Id.* at 1.) Put another way, the contracts' plain language is that the "Publisher" as used throughout the contracts is HBSA, not HEL. Contrary to Plaintiffs' claims, this definition's appearance before the substantive provisions of the contracts does not mean that the term "Publisher" is undefined.

That HEL undertook some of the publishing duties outlined in the contracts is similarly unavailing to render HEL the "Publisher" under those contracts.  Indeed, the contracts themselves provide that the "Publisher" may assign or delegate publishing duties "to any related legal entity," including "to its parent company or to an affiliate [or] subsidiary."  (*Id.* at 19.)   HBSA's actual delegation of duties to HEL thus does not cast doubt on the designation of HBSA as the "Publisher."  Accordingly, there is no breach of contract based on Defendants' failure to pay 50 percent of HEL's net receipts.  Under the contracts, Plaintiffs' royalties are properly based on the receipts of the defined "Publisher"—here, the Harlequin subsidiaries.

**B.  Plaintiffs' Alter Ego, Assignment, and Agency Theories**

Plaintiffs also assert alter ego, assignment, and agency theories as grounds to reread the "All Other Rights" clause to base royalties on HEL's net receipts.  But setting aside whether Plaintiffs have adequately pled any of these theories, none are theories of contract interpretation.  Rather, all are theories of liability.  *See In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 290–92 (S.D.N.Y. 2005) (describing agency and alter ego as theories of vicarious liability); *Holland v. Fahnestock & Co. Inc.*, 210 F.R.D. 487, 498 (S.D.N.Y. 2002) (describing assignment's effect on defendants' liability).  Even if HEL were liable on the contracts as a nonsignatory under these theories, that fact would not change the definition of the "Publisher" under the terms of the agreement.  And as described further below, Plaintiffs' alternative theory for contract breach also fails.  Accordingly, I need not consider the viability of Plaintiffs' theories imputing liability to HEL on the contracts, as no contract breach has been adequately pled.

**C.  Plaintiffs Fail to State a Claim as to Unreasonable License Fees**

Plaintiffs' second theory of breach is that the licensing fees HEL paid to HBSA—the figure on which Plaintiffs' royalties were based—were not equivalent to "the amount reasonably obtainable from an Unrelated Licensee" as required under the contracts.  (Crew Dec. Ex. 1–3, at 13.) Plaintiffs assert that a reasonable amount would be "at least 50% of net receipts."  (Am. Compl. ¶ 83.)  But Plaintiffs do not allege any facts supporting this assertion.  And indeed, courts have dismissed as conclusory similar unsupported allegations as to reasonable prices.  *See Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334, 336 (2d Cir. 2011) (finding price allegations to be conclusory where "[plaintiff] provide[d] no facts to support its contention that $170 is actually close to the standard industry cost").  Because Plaintiffs' allegations amount to little more than speculation, Plaintiffs have failed to sufficiently plead a breach of contract based on an unreasonable license fee.

**D. Plaintiffs' Unjust Enrichment Claim**

Having failed to state a claim for contract breach, in the alternative Plaintiffs argue that HEL was unjustly enriched when it sold Plaintiffs' e-books. Plaintiffs can recover on an unjust enrichment theory only in the absence of an enforceable agreement. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). This claim is thus based on the premise that there is no provision in the publishing agreements governing the sale of e-books. But here, the terms of the publishing agreements and the "All Other Rights" clause expressly include "all other rights exercised by Publisher or its Related Licensees." (Crew Dec. Ex. 1–3, at 13.) The parties dispute neither the contracts' validity nor that HEL's "sale" of e-books was a right exercised "by Publisher or its Related Licensees" under the contracts. Similarly, the parties agree that the subject of this dispute, Plaintiffs' e-book royalties, falls within the scope of the publishing agreements. Therefore, Plaintiffs' unjust enrichment claim must fail. *See, e.g., SCM Grp., Inc. v. McKinsey & Co., Inc.*, 2011 WL 1197523, at *6 (S.D.N.Y. Mar. 28, 2011) ("[W]here there is a valid and enforceable written contract governing a particular subject matter, recovery in quasi-contract for acts relating to the same subject matter is precluded.").

## CONCLUSION

I have considered the parties' remaining arguments and find them meritless. For the reasons stated above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is instructed to close this motion, close this case, and remove it from my docket.

**SO ORDERED.**

Date: April 2, 2013
New York, New York

HAROLD BAER, JR.
United States District Judge

4