**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

BARBARA KEILER, MONA GAY THOMAS,
and LINDA BARRETT, on behalf of
themselves and all others similarly situated,

                    Plaintiffs,

      v.

HARLEQUIN ENTERPRISES LIMITED, a
Canadian corporation; HARLEQUIN BOOKS
S.A., a Swiss company; and HARLEQUIN
ENTERPRISES B.V., a Dutch company,

                    Defendants.

-------------------------------------------------------------X

12 Civ. 5558(WHP)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.      Introduction ........................................................................................................ 1

II.     Factual Background ........................................................................................... 1

III.    The Proposed Settlement .................................................................................. 3

        A.      Settlement Benefits ..................................................................................3

        B.      Attorneys' Fees, Costs, And Service Payments .......................................4

        C.      Release Of Claims ...................................................................................4

        D.      Notice Has Been Given In Accordance With The Court's Order ............4

IV.     The Approved Notice Was Adequate And Satisfied Due Process ..................... 5

V.      The Settlement Meets The Standards For Final Approval ................................. 6

        A.      The Settlement Process Was Procedurally Fair .......................................7

        B.      The Settlement Is Reasonable, Adequate, And Substantively Fair .........8

                1.      The Anticipated Complexity, Duration, And Expense Of
                        Additional Litigation .....................................................................9

                2.      The Reaction Of The Class To The Settlement ..............................9

                3.      The Stage Of The Proceeding And The Amount Of Discovery
                        Completed ....................................................................................10

                4.      The Risks Of Establishing Liability .............................................11

                5.      The Risks Of Establishing Damages .............................................11

                6.      The Risks Of Maintaining The Class Action Through Trial ........12

                7.      The Ability Of Defendants To Withstand A Greater Judgment ....12

                8.      The Range Of Reasonableness Of The Settlement In Light Of The
                        Best Possible Recovery And In Light Of All Attendant Risks Of
                        Litigation .....................................................................................13

VI.     The Plan Of Allocation Is Fair And Adequate ............................................... 14

VII.    The Class Satisfies All Requirements Of Rule 23 .......................................... 16

VIII.   Conclusion ...................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Pages(s)**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................18

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013)..............................................................7

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).............................................6, 8, 9, 13, 14

*City of Providence v. Aeropostale, Inc.*,
    No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)..........6, 10-14

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)................................................................17

*Custom LED, LLC v. eBay, Inc.*,
    No. 12-CV-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ............5

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................6

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).........................................................................5

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)...........15

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775 JG VVP, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) ......15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) .......................................................14

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).............................................13, 14

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).........7, 14

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) (Pauley, J.) .....................................7

**Cases (cont'd)**                                                          **Pages(s)**

*In re Elec. Books Antitrust Litig.*,
  No. 11MD2293 DLC, 2014 WL 3798764 (S.D.N.Y. Aug. 1, 2014) .................................7

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................................18

*In re Indep. Energy Holdings PLC*,
  No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)......................15

*In re Initial Public Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ..................................................................................................9

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 CIV.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................15

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................................5

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ..............................................................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998).................................................................................................7, 11

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.) ................................................................................................11, 12

*In re Sumitomo Copper Sec. Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ..............................................................................................10

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108, 124 (2d Cir. 2013)..............................................................................................18

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)............................................................................................12

*Johnson v. Brennan*,
  No. 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)............................13

*Keiler v. Harlequin Enterprises Ltd.*,
  751 F.3d 64 (2d Cir. 2014)............................................................................................................2

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................................................9

**Cases (cont'd)**                                                                          **Pages(s)**

*Mills v. Capital One, N.A.*,
    No. 14 CIV. 1937 HBP, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ..........................12

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*,
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) (Pauley, J.) ........................................................9, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................5, 6, 8, 9


**Rules**

Fed. R. Civ. P. 23 .............................................................................................................1

Fed. R. Civ. P. 23(a) ......................................................................................................16

Fed. R. Civ. P. 23(a)(1) ..................................................................................................17

Fed. R. Civ. P. 23(a)(2) ..................................................................................................17

Fed. R. Civ. P. 23(a)(3) ..................................................................................................17

Fed. R. Civ. P. 23(a)(4) ..................................................................................................17

Fed. R. Civ. P. 23(b)(3)...............................................................................................16, 18

Fed. R. Civ. P. 23(c)(1)(C) .........................................................................................12, 16


**Other Authorities**

Manual for Complex Litigation, Third, § 30.42 (1995)...................................................6

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Barbara Keiler, Mona Gay Thomas and Linda Barrett ("Plaintiffs"), on behalf of themselves and the Class, through their counsel, Boni & Zack LLC and DavidWolfLaw pllc (collectively, "Class Counsel"), respectfully submit this Memorandum in Support of Plaintiffs' Motion for Final Approval of the Settlement with Defendants Harlequin Enterprises, Harlequin Books S.A. and Harlequin Enterprises B.V. (collectively, "Defendants" or "Harlequin"), Approval of the Plan of Distribution, and Certification of the Class.

## I.    INTRODUCTION

After more than three years of hard-fought litigation, this class action has achieved an outstanding result that substantially increased the compensation authors received for the sales of their older works that were republished by Harlequin as ebooks. The Settlement has created a common fund of $4.1 million that comprises approximately 75% of Class Counsel's informed view of actual damages based on the materials reviewed in discovery and provided by Harlequin for the purposes of settlement. Class Members will be paid their pro rata share from that fund, net expenses and attorneys' fees (subject to Court approval). Class Members will receive the benefits of the Settlement without being required to submit a claim form and none of the money will revert back to the Defendants. Significantly, not a single Class Member has objected to or requested exclusion from the Settlement.

Because the Settlement is fair, adequate and reasonable, Plaintiffs now request, pursuant to Federal Rule of Civil Procedure 23, that the Court grant final approval of the Settlement and enter the proposed Final Approval Order.

## II.   FACTUAL BACKGROUND

The procedural history of this case and the terms of the Settlement are discussed in detail in Plaintiffs' Preliminary Approval Motion (ECF No. 68, at 2-9) and Class Counsel's

Application for an Award of Attorneys' Fees, Service Awards, and Reimbursement of Expenses (ECF No. 78, at 2-9), and are only briefly summarized here.

Plaintiffs brought this action on behalf of a class of Harlequin romance novelists whose print works were re-published by Harlequin as ebooks. Plaintiffs challenged the amount of royalties authors received from Harlequin's sale of their ebooks pursuant to a clause in older publishing agreements known as the "All Other Rights" clause. That clause provided that "[o]n all other rights exercised by Publisher or its Related Licensees" authors were to be paid "fifty percent (50%) of the Net Amount Received by Publisher for the license or sale of said rights." Calculating the amount due to authors under this All Other Rights clause is complicated because authors entered into these publishing agreements with Harlequin's Swiss subsidiaries, which, for simplicity, are referred to as "Harlequin Switzerland." Harlequin Switzerland then licensed the works to its parent corporation, Harlequin Enterprises (a "Related Licensee" under the publishing agreements).

Plaintiffs' complaint was originally dismissed, but on appeal, the Second Circuit reversed that dismissal as to one of Plaintiffs' breach of contract causes of action. The Second Circuit ruled that Plaintiffs adequately alleged a claim that "defendants breached the Publishing Agreements because the licensing fees Harlequin Enterprises paid to Harlequin Switzerland—the figure on which plaintiffs' royalties were based—were not 'equivalent to the amount reasonably obtainable . . . from an Unrelated Licensee.'" *Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

The parties nearly completed merits discovery, exchanging thousands of pages of documents and completing two of several scheduled depositions. Discovery focused on, among things, the manner in which Defendants had established the inter-company license rate paid by

Harlequin Enterprises to Harlequin Switzerland and evidence concerning the market value of the right to publish the Class Members' books. As the parties neared the end of discovery, they began to explore potential settlement. After informal settlement discussions were unsuccessful, the parties agreed to seek the assistance of Peter H. Woodin, a JAMS New York mediator with more than 20 years of ADR experience. The parties participated in an all-day mediation session with Mr. Woodin on August 4, 2015, as well as multitudinous subsequent intensive telephonic negotiations involving Mr. Woodin. Eventually, on October 14, 2015, the parties agreed to settle for a common fund of $4.1 million. After extensive negotiation of the Settlement Agreement and supporting settlement papers, on March 18, 2016, Class Counsel moved for preliminary approval of the Settlement Agreement. (ECF Nos. 67, 68 & 69.) After a telephonic hearing on April 5, 2016, the Court preliminarily approved the Settlement Agreement and scheduled a fairness hearing for June 30, 2016. (ECF No. 72.)

## III.    THE PROPOSED SETTLEMENT

### A.    Settlement Benefits

The Agreement provides for a common fund in the amount of $4.1 million. (Agreement, ECF No. 69, Ex. 1, ¶¶ 21, 23-29.) The common fund comprises approximately 75% of Class Counsel's informed view of actual damages since, based on the materials reviewed in discovery and provided for the purposes of settlement, Plaintiffs calculated damages based on underpayment of ebook royalties as approximately $5.5 Million if a 50% of net receipts license fee had been set as alleged in the complaint. The Settlement Fund, net of all Settlement Administration Expenses, attorneys' fees and costs, service awards, and all applicable taxes, if any, shall be distributed to all Class Members, pro rata based on the amount of royalties the Class Members received from, or were owed by, Harlequin pursuant to an All Other Rights

Clause for sales of ebooks. (ECF No. 69, Ex. 1, ¶¶ 21, 23-29.) Claims will be paid automatically to Class Members with no possibility of any reversion of funds to Defendants.

### B.   Attorneys' Fees, Costs, And Service Payments

The Settlement Agreement provides, subject to the Court's approval, for an award of $1,025,000 in attorneys' fees and $28,206.25 in expenses, as well as approval of service awards for each of the class representatives of $5,000 each. In accordance with the Settlement Agreement and the Court's Preliminary Approval Order, Class Counsel's fee petition was filed (ECF Nos. 77-80) and posted on the Settlement website, harlequinsettlement.com, by the Settlement Administrator on May 5, 2016. (*See* Affidavit of Jose C. Fraga Regarding (A) Mailing of the Notice; (B) Website and Telephone Helpline; and (C) Report on Requests for Exclusions Received to Date, dated June 15, 2016 ("Fraga Aff.") ¶ 8.)

### C.   Release Of Claims

The Agreement provides for a release of all claims for relief that have or could have been asserted based on the facts alleged in the amended complaint. (Agreement, ECF No. 69, Ex. 1, ¶ 15 & § G, ¶¶ 42-45.) The terms of the release were also clearly stated in the Notice to Class Members. (*See* Fraga Aff. Ex. A, § 9.)

### D.   Notice Has Been Given In Accordance With The Court's Order

In granting preliminary approval of the Settlement, the Court ordered that Notice be given to the class in various forms and through various methods. (ECF No. 72, ¶¶ 8-10.) As set forth in the accompanying declaration and section IV below, Notice was disseminated by the Settlement Administrator, Garden City Group, as ordered by the Court. (Fraga Aff. ¶¶ 2-7.)

## IV.    THE APPROVED NOTICE WAS ADEQUATE AND SATISFIED DUE PROCESS

"The standard for the adequacy of a settlement notice in a class action under either the

Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc.*

*v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005). The notice should "fairly, accurately, and

neutrally describe the claims and parties in the litigation as well as the terms of the proposed

settlement and the identity of persons entitled to participate in it." *In re Marsh ERISA Litig.*, 265

F.R.D. 128, 145 (S.D.N.Y. 2010) (citations omitted). Here, the Notice approved by the Court

explained in plain language, among other things, Plaintiffs' claims in the Action, the Settlement

benefits, the claims being released, instructions on how to participate in, opt out of, or object to,

the Settlement, and the fact of and the date, time and location of the fairness hearing. (Fraga Aff.

Ex. A.)

To the extent individual class members "can be identified through reasonable effort,"

they should be provided with individual notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176

(1974). Courts have approved sending individual notice by email where email addresses are

available. *See, e.g.*, *Custom LED, LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2014 WL 2916871,

at *3 (N.D. Cal. June 24, 2014). In accordance with the Preliminary Approval Order, the

Settlement Administrator, Garden City Group, disseminated Notice directly at the email address

or, if no email address were available, postal address, which Harlequin provided pursuant to the

Settlement Agreement. (Fraga Aff. ¶¶ 2-7.) The Settlement Administrator also took efforts to

send Notice to those potential Class Members for whom Notice was not initially deliverable,

including mailing 86 Notices to Class Members for whom emailed Notices were returned as

undeliverable and re-mailing 15 Notices to Class Members at updated addresses provided by the

U.S. Postal Service. (*Id.* ¶ 6.) In total, the Settlement Administrator mailed by first-class mail,

postage prepaid, or emailed 1,279 Notices to potential Class Members. (*Id.*) Individual Notice

was sent to all potential Class Members identified with the following exception. In two instances an author pseudonym was associated with two royalty co-recipients, but Harlequin only provided contact information for one co-recipient and therefore Notice was only able to be sent to one of the co-recipients. (*Id.* ¶ 7.) Additionally, the Notice was posted on a website maintained by the Settlement Administrator, harlequinsettlement.com, on April 20, 2016. (*Id.* ¶ 8.) The Settlement Administrator also maintained a toll-free telephone number and email address that allowed Class Members to obtain information about the Settlement. (*Id.*)

Accordingly, the Notice plan approved by the Court was completed and satisfies the requirements of due process.

## V.      THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL

"A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citations omitted). "The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores*, 396 F.3d at 116-17 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)). "Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give 'rubber stamp approval' to a proposed settlement, it must 'stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case.'" *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir.1974)), *aff'd sub nom. Arbuthnot v.*

*Pierson*, 607 F. App'x 73 (2d Cir. 2015). Finally, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 138 (2d Cir. 1998).

Applying these standards to the Settlement before the Court, the Settlement is both procedurally and substantively fair and reasonable.

**A.    The Settlement Process Was Procedurally Fair**

In deciding whether the settlement process was procedurally fair, a "court should 'review the negotiating process leading up to the settlement for procedural fairness.'" *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *6 (S.D.N.Y. Apr. 26, 2016) (quoting *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013)). "Where a settlement is the 'product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation,' the negotiation enjoys a 'presumption of fairness.'" *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (Pauley, J.) (citations omitted). Additionally, "[t]he assistance of a well-known mediator . . . reinforces the conclusion that the Settlement Agreement is non-collusive." *In re Elec. Books Antitrust Litig.*, No. 11MD2293 DLC, 2014 WL 3798764, at *2 (S.D.N.Y. Aug. 1, 2014).

In this case, the Settlement Agreement was reached only after extensive, at times contentious, negotiation between experienced counsel, and later with the assistance of Peter H. Woodin, a JAMS New York mediator with more than 20 years of ADR experience. The parties did not begin serious settlement discussions until after a significant amount of discovery had been completed, which enabled Class Counsel to evaluate the strength and weaknesses of the case and develop an informed view of damages. On August 4, 2015, the parties participated in an all-day mediation session with Mr. Woodin. The in-person session resulted in many subsequent intensive telephonic negotiations involving Mr. Woodin. Eventually, the parties agreed on

October 14, 2015 to settle for a common fund of $4.1 million. From that date until March 11, 2016, the parties negotiated vigorously to draft and finalize the Settlement Agreement and supporting settlement papers.

Accordingly, a review of the negotiating process leading up to the Settlement Agreement confirms that the settlement process was procedurally fair.

### B.    The Settlement Is Reasonable, Adequate, And Substantively Fair

In order to determine substantive fairness, courts within this Circuit "examine the fairness, adequacy, and reasonableness of a class settlement according to" factors identified in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974) (the "*Grinnell* factors"), which are:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery;
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores*, 396 F.3d at 117 (quoting *Grinnell,* 495 F.2d at 463 (citations omitted)).

Consideration of these factors strongly confirm that the Settlement is fair and reasonable.

### 1. The Anticipated Complexity, Duration, And Expense Of Additional Litigation

As to the first *Grinnell* factor, had this case not settled when it did, there would have been burdensome and expensive litigation as a result, with an uncertain result. *See In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 93 (S.D.N.Y. 2007) ("The prospect of an immediate monetary gain may be more preferable to class members than the uncertain prospect of a greater recovery some years hence."). While this case had advanced sufficiently for the parties to have an informed view of the litigation and prospective damages in order to negotiate a fair settlement, there was still a significant amount of litigation that would have been required. There would have been extensive briefing on summary judgment, a trial, and, depending upon the result of summary judgment or such a trial, an appeal. Even if Plaintiffs had fully prevailed, the expense of such protracted litigation would have eroded any potential recovery by the Class.

Accordingly, consideration of the anticipated complexity, duration, and expense of additional litigation strongly weigh in favor of approving the Settlement.

### 2. The Reaction Of The Class To The Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citations omitted). Here, the support for the Settlement among Class Members has been unanimous. ***Not a single Class Member has objected to the Settlement, and no Class Member has requested to be excluded from the Settlement.*** (Fraga Aff. ¶ 8.) "'The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.'" *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014) (Pauley, J.) (citations omitted); *see also Wal-Mart*, 396 F.3d at 118 ("'If only a small number of objections are

received, that fact can be viewed as indicative of the adequacy of the settlement.'" (citations omitted)). Accordingly, this factor overwhelmingly supports final approval of the Settlement.

### 3.     The Stage Of The Proceeding And The Amount Of Discovery Completed

Next, in evaluating the Settlement, courts consider the stage of the proceeding and the amount of discovery completed. "In considering this factor, 'the question is whether the parties had adequate information about their claims,' such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *City of Providence*, 2014 WL 1883494, at *6 (citations omitted). The Settlement here came about only after three years of extensive litigation. The parties briefed and argued the motion to dismiss the complaint, and then briefed and argued the order dismissing the complaint before the Second Circuit. The Second Circuit's decision revived the complaint on appeal, but substantially narrowed the claims that remained viable. The parties conducted extensive discovery. They substantially completed document discovery, which involved reviewing approximately 90,000 pages of documents, as well as taking the deposition of two key witnesses and preparing for the depositions of other witnesses. Class Counsel began to work with their expert witnesses in preparation of their reports. These discovery efforts allowed Class Counsel to prepare a comprehensive mediation statement, which included hundreds of pages of exhibits that Plaintiffs intended to use in support of their claims and preliminary damages calculations. Courts have found the fact that there has been substantial and thorough discovery, as is the case here, to "strongly favor" approval of a class action settlement. *In re Sumitomo Copper Sec. Litig.*, 189 F.R.D. 274, 281-82 (S.D.N.Y. 1999). Accordingly, this factor strongly supports final approval of the Settlement Agreement.

10

### 4.     The Risks Of Establishing Liability

The next factor in evaluating the Settlement requires the Court to "balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *City of Providence*, 2014 WL 1883494, at *7. Here, Class Members will receive an immediate benefit in the form of a $4.1 million common fund. Had this case proceeded in the absence of a settlement, there is no guarantee that the Class Members would have received any benefit because there was the risk that Defendants could have prevailed on their defenses either on summary judgment or at trial. Harlequin contended, among other things, that it did not establish the inter-company license rates in bad faith and that there was no breach of the publishing agreements. Although Plaintiffs disputed Harlequin's defenses, had the Court or a jury accepted Harlequin's defenses, the Class Members would have obtained no benefit. Because the Settlement provides a clear benefit in the face of the uncertainty as to Defendants' liability, this factor weighs in favor of final approval.

### 5.     The Risks Of Establishing Damages

If Plaintiffs had survived summary judgment and prevailed on questions of liability at trial, Plaintiffs still faced the risk of recovering damages that could have been less than the amount obtained by settlement, because "damages are a matter for the jury, whose determinations can never be predicted with certainty," *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Even in cases where the "risk of failing to establish liability" is "relatively small" a plaintiff can face "risks in establishing their damages" that weigh in favor of approving a class action settlement. *Sakiko Fujiwara* 58 F. Supp. 3d at 433. In this case, Harlequin vigorously disputed Plaintiffs' damages calculations. Defendants argued that there was insufficient evidence that Harlequin Switzerland could have obtained a higher license rate from an unrelated licensee for the works at issue and

that authors were not entitled to more than they had already been paid. Ultimately, the question of damages would have come down to "competing expert testimony on damages [that] would inevitably reduce the trial of these issues to a risky 'battle of the experts.'" *City of Providence*, 2014 WL 1883494, at *9 (citations omitted). Thus, the risk that Plaintiffs would have faced in establishing damages also weighs in favor of approving the Settlement Agreement.

### 6.    The Risks Of Maintaining The Class Action Through Trial

In this case, the risks of maintaining the class action through trial were not as great as they may be in some other cases because the parties stipulated to class certification at the Court's suggestion that the class was likely to be certified. Nonetheless, there was always a risk that Defendants could have moved to decertify the Class if individualized issues arose concerning Harlequin's defenses or in connection with Plaintiffs' final damages expert report. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (explaining that although the "class was conditionally certified upon the parties' stipulation," the "threat of decertification makes settlement all the more attractive to plaintiffs"), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *cf.* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Accordingly, this *Grinnell* factor does not weigh strongly in either direction.

### 7.    The Ability Of Defendants To Withstand A Greater Judgment

In this case, there is no evidence that Defendants could not have paid a larger award. However, while "evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, … the converse is not necessarily true; i.e., the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 129; *see also Mills v. Capital One, N.A.*, No. 14 CIV. 1937 HBP, 2015 WL 5730008, at

*6 (S.D.N.Y. Sept. 30, 2015) ("[A] 'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" (citations omitted)). Accordingly, this *Grinnell* factor is also neutral.

8. **The Range Of Reasonableness Of The Settlement In Light Of The Best Possible Recovery And In Light Of All Attendant Risks Of Litigation**

The final two *Grinnell* factors require the Court to consider whether the Settlement falls within the range of reasonableness in light of both the best possible recovery and all attendant risks of litigation. "In analyzing these last two factors, the issue for the Court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence*, 2014 WL 1883494, at *9; *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013) ("In other words, the question for the Court is not whether the settlement represents the highest recovery possible— which it does not—but whether it represents a reasonable one in light of the many uncertainties the class faces—which it does."). "Moreover, when settlement assures immediate payment of substantial amounts to class members, 'even if it means sacrificing "speculative payment of a hypothetically larger amount years down the road,"' settlement is reasonable under this factor." *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011) (citations omitted).

In this case, Plaintiffs claimed that the amount reasonably obtainable by a publisher from an unrelated licensee for the license or sale of these rights was "at least 50% of net receipts." (Compl. ¶ 83.) Based on the materials reviewed in discovery and provided for the purposes of settlement, Plaintiffs calculated damages based on underpayment of ebook royalties as approximately $5.5 Million if a 50% of net receipts license fee had been set. Thus, the $4.1 million settlement amount comprises approximately 75% of Class Counsel's view of actual

damages. This is an outstanding result for the Class and well within the range of reasonableness considering both the best possible result and the risks of litigation. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 384 (finding settlement comprising approximately 9.4% of "best possible recovery" satisfied this standard). Accordingly, these final two considerations weigh strongly in favor of final approval of the Settlement.

* * *

In sum, consideration of the *Grinnell* factors confirms that the Settlement, which provides certain and immediate payment to Class Members from a $4.1 million common fund in the face of a protracted and uncertain outcome, is reasonable, adequate, and substantively fair.

## VI.   THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

"The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: namely, it must be fair and adequate." *City of Providence*, 2014 WL 1883494, at *10 (citations and internal quotation marks omitted). "'When formulated by competent and experienced class counsel,' a plan of allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *In re Am. Int'l Group, Inc. Sec. Litig.*, 293 F.R.D. 459, 466 (S.D.N.Y. 2013) (citations omitted). "A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016).

The plan of allocation provides that the $4.1 million settlement fund, net of all Settlement Administration Expenses, attorneys' fees and costs, service awards, and all applicable taxes, if any, shall be distributed to all Class Members, pro rata based on the amount of royalties the Class Members received from, or were owed by, Harlequin pursuant to the All Other Rights Clause for sales of ebooks. (Agreement, ECF No. 69, Ex. 1, ¶¶ 21, 23-29.) Claims will be paid

14

automatically to Class Members with no possibility of any reversion of funds to Defendants. In accordance with the Settlement Agreement, Defendants provided to the Settlement Administrator data showing for each Class Member the royalties Harlequin paid, or was obligated to pay, pursuant to the All Other Rights Clause relating to ebook sales through December 31, 2015, reported as of April 1, 2016. (Agreement, ECF No. 69, Ex. 1, Ex. 1 ¶ 28.) Any remaining funds in the Settlement Fund shall be distributed as further ordered by the Court. (Agreement, ECF No. 69, Ex. 1, Ex. 1 ¶ 26.)

Courts have routinely found plans of allocation that distribute settlement funds to class members on a pro rata basis to be reasonable. *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *12 (S.D.N.Y. Sept. 9, 2015) ("This type of distribution, where funds are distributed on a pro rata basis, has frequently been determined to be fair, adequate, and reasonable."); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("In this case, the pro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003).

Finally, the reasonableness of the allocation plan is confirmed by the fact that not a single member of the Class has objected to it. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2011 WL 2909162, at *5 (E.D.N.Y. July 15, 2011) ("[T]he lack of objections is a strong indication that the Settlement Allocation Plan is fair and reasonable."); *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *5 (S.D.N.Y.

Sept. 29, 2003) ("[T]he lack of any objections suggest that approval of the Plan of Allocation is warranted.").

## VII.   THE CLASS SATISFIES ALL REQUIREMENTS OF RULE 23

The Court certified a Class in this case on October 16, 2014 (ECF No. 49), but no Notice of Pendency of Class Action had been disseminated to potential Class Members. For the purposes of settlement only, the parties ask the Court to amend the certified Class to a slightly modified definition of the Class, *see* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment"), as follows:

> All persons, and their heirs and assigns, in the United States, Canada, the United Kingdom, the Republic of Ireland, Australia, and New Zealand, who, during the period 1990 to 2004, entered into a standard form book publishing agreement with Defendant Harlequin Enterprises B.V. or Defendant Harlequin Books S.A. that contained an All Other Rights clause, substantially and materially as follows:
>
> > On all other rights exercised by Publisher or its Related Licensees fifty percent (50%) of the Net Amount Received by Publisher for the license or sale of said rights. The Net Amount Received for the exercise, sale or license of said rights by Publisher from a Related Licensee shall, in Publisher's estimate, be equivalent to the amount reasonably obtainable by Publisher from an Unrelated Licensee for the license or sale of the said rights;
>
> and whose written works published pursuant to those book publishing agreements have been published as e-books. Excluded from the Settlement Class are any persons who file a timely and valid request for exclusion from the Settlement Class that is allowed by the Court.

The slightly modified class definition will facilitate easier administration of the Settlement Fund and contains a provision excluding from the Class those who request exclusion (a provision that is now moot). The findings as to the prerequisites of Fed. R. Civ. P. 23(a) and requirements of Fed. R. Civ. P. 23(b)(3), adopted by the Court's Order certifying the original

class (ECF No. 49), are equally applicable to the modified Class definition and are briefly restated here.

The Class satisfies the numerosity requirement of Rule 23(a)(l) because more than one thousand members have been identified from the records provided by Defendants. (Fraga Aff. ¶ 3.) *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

The "commonality" requirement of Rule 23(a)(2) is met. Questions of law or fact common to all Class Members include whether Defendants breached the "All Other Rights" clause by failing to pay ebook royalties to authors based on a "Net Amount Received for the exercise, sale or license of said rights by Publisher from a Related Licensee," which Defendants determined in a manner uniform as to all Class Members, that was, "in Publisher's estimate . . . equivalent to the amount reasonably obtainable by Publisher from an Unrelated Licensee for the license or sale of the said rights."

The "typicality" requirement of Rule 23(a)(3) is met because the Representative Plaintiffs are all authors who have entered into standard publishing contracts with Defendants that include an identical or a substantially and materially similar "All Other Rights" clause. Whether Defendants are liable as to each of the Representative Plaintiffs, as is the case with all Class Members, will depend upon the same legal theories.

The "adequacy of representation" requirement of Rule 23(a)(4) is met. The interests of each of the Representative Plaintiffs are aligned with other Class Members, as they sought to obtain the ebook royalties to which they were entitled under their respective, substantially identical contracts. Moreover, Plaintiffs are represented by able counsel with substantial experience in class action, copyright and book publishing contract litigation. Indeed, the

17

adequacy of the representation is confirmed by the outstanding settlement achieved to which not a single Class Member has objected or opted out. (Additionally, there have been no objections to Class Counsel's motion for attorneys' fees.)

The predominance requirement of Rule 23(b)(3) is met because the primary common question in this case is whether Defendants underpaid ebook royalties according to the terms of its standard publishing agreements with the Class Members, which are "substantially similar in all material respects," *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1938 (2014).

Finally, the superiority requirement of Rule 23(b)(3) is satisfied because combining the claims of individual authors challenging Defendants' calculation of ebook royalties into a single action is far more efficient than requiring the same issues to be litigated multiple times. Additionally, there will be no undue manageability concerns by litigating this case as a class action, particularly given that the case has now settled. *See, e.g.*, *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 454 (S.D.N.Y. 2004) ("Where, as here, a class is being certified solely for *settlement* purposes, the Court need not consider the manageability issues that would arise if the case were to be *litigated* as a class action." (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Accordingly, Plaintiffs respectfully request that the Court amend its prior class certification order and certify the Class as defined in the proposed Final Approval Order.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Final Approval, approve the Plan of Distribution, and certify the amended Class, as reflected in the proposed Final Approval Order.

Respectfully submitted,

Dated: June 16, 2016

/s/ Michael J. Boni
Michael J. Boni (*Pro Hac Vice*)
John E. Sindoni (*Pro Hac Vice*)
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel. (610) 822-0200
Fax (610) 822-0206
Email: MBoni@bonizack.com
         JSindoni@bonizack.com

David B. Wolf (DW-2077)
DAVIDWOLFLAW PLLC
One Grand Central Place
60 East 42nd Street, Suite 4700
New York, NY 10165
Tel. (212) 485-9808
Fax (212) 485-9809
Email: David@DavidWolfLaw.com

*Attorneys for Plaintiffs and the Class*